UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 19-11573-RGS

ZYXEL COMMUNICATIONS, INC.,
Individually and as Assignee of MitraStar Technology Corp.

v.

SKYWORKS SOLUTIONS, INC.

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION TO DISMISS

December 11, 2019

STEARNS, D.J.

In this product liability dispute, ZyXEL Communications, Inc. (ZyXEL Inc.), a seller of defective wireless routers, seeks to hold Skyworks Solutions, Inc., the designer and manufacturer of a microwave monolithic integrated circuit (MMIC) power amplifier component, responsible for the "[e]ndemic [f]ailure" of its routers. Compl. ¶ 35. ZyXEL Inc. asserts claims under the Racketeer Influence and Corrupt Organization Act (RICO), 18 U.S.C. § 1962(c) (Count I); fraud and intentional misrepresentation (Count II); and breach of the implied warranty of fitness for a particular purpose (Count III). Skyworks moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state claims upon which relief can be granted.

BACKGROUND

To set the stage, first the players: Massachusetts-based defendant Skyworks designs and manufactures semiconductor components for use in the fabrication of wireless routers. Asian Information Technology, Inc. (AIT), a Taiwanese company, is a Skyworks distributor. MitraStar Technology Corporation, also based in Taiwan, manufactures, among other products, wireless networking routers. Plaintiff ZyXEL Inc., based in California, is a wholly owned subsidiary of ZyXEL Communication Corp. (ZyXEL Corp.), another Taiwanese company. ZyXEL Inc. imports products from ZyXEL Corp. and sells them in the United States.

Now the plot: Through mid-2016, Skyworks manufactured an MMIC power amplifier designated as model SE2605L-R. Sometime in 2016, Skyworks learned from a customer of a latent defect in the SE2605L-R. Compl. ¶ 18. As explained in an "8D Problem Solving Report" authored by Skyworks in June of 2018, "the problem was that the Rfin reference grounding level of the [] SE2605L-R was being impeded where epoxy, known as the die attach layer, was used to connect two key components of the device." *Id.* ¶ 13.

> [W]hen functioning normally, the die attach layer effectively connects the die to the lead frame (ground) by way of the conducting properties of the die attach layer, such as the

> flakes of silver suspended in the epoxy used in the []SE2605L-R. However, in the [] SE2605L-R, the flakes of silver in the epoxy used for the die attach layer shifted over time away from the copper lead frame toward the backside of the die.

*Id.* ¶ 14. The shifting of the silver flakes in the epoxy "developed as a result of the difference in electrode potential of silver and copper," *id.* ¶ 16, and produced "less conductivity between the silver flakes in the epoxy and the copper lead frame, and thereby impeding the RFin reference grounding level and causing high 'RFin to Ground resistance,'" *id.* ¶ 14. High RFin to ground resistances causes instability, and "produce[s] a radio signal outside of the parameters of its specification." *Id.* ¶ 15. In other words, the SE2605L-N was doomed to fail over time.

In response, in July of 2016, Skyworks made two principal changes to the design of the SE2605L-R – "(i) conversion of the lead frame finish from copper to NiPdAu; and (ii) conversion of the epoxy used for the die attach layer from 2815A to 1290WB." Compl. ¶ 18. The redesigned MMIC power amplifier was designated as model SE2605L-RN. Skyworks issued a Product Change Notification (PCN) on August 16, 2016, which was distributed to its customers worldwide. According to the PCN,

a. The reason for the product changes [was] "[t]o be consistent with the material set of other Skyworks Product";

b. "[T]here is no change to fit, function, reliability, quality or safety"; and

c. "No customer impact is anticipated with this change."

*Id.* ¶ 21. Skyworks began shipping the new SE2605L-RN on September 15, 2016, but also continued to sell off its remaining inventory of SE2605L-R.

Between August 28 and November 9 of 2016, MitraStar placed 11 purchase orders for SE2605L-R, totaling approximately 1 million units, *see id.* ¶ 31,[1] the fulfillment of which MitraStar received through May of 2017. During that period, MitraStar received a copy of the PCN in September of 2016. In October of 2016, MitraStar received samples of the new SE2605L-RN from AIT. MitraStar inquired of AIT the differences between the SE2605L-R and the new SE2605L-RN (other than those described in the PCN). AIT identified only the marking information, such as the model number, shown on the surface of the Skyworks SE2605L-RN. In February of 2017, MitraStar repeated the request. AIT responded by pointing to the material composition identified in the PCN. AIT also provided test reports

---

[1] Paragraph 26 of the Complaint alleges that, after mid-2016, MitraStar purchased approximately 1.45 million units of SE2605L-R from AIT.

purporting to demonstrate immaterial performance differences between the two models.

Finally, the denouement: MitraStar built the SE2605L-R into its model C1100Z wireless routers. ZyXEL Corp. purchased the routers from MitraStar. ZyXEL Inc. imported and sold them in the United States. In May of 2018, Century Link, Inc., ZyXEL Inc.'s most important U.S. customer, reported widespread reliability and performance failures involving the C1100Z routers. MitraStar engineers determined that the problems originated with the SE2605L-R component. When the results were reported to Skyworks, it generated the 8D Report described *supra*, disclosing the defect in the SE2605L-R. Ultimately, ZyXEL Inc. established a 13% failure rate in the C1100Z routers, compared to an industry standard of less than 1%. CenturyLink invoked an "Endemic Failure" section of its Resale Agreement, and sought compensation "that could run to tens of millions of dollars." *Id.* ¶ 35. ZyXEL Inc., having been assigned MitraStar's rights, filed suit in July of 2019.

## DISCUSSION

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations of a complaint must "possess enough heft" to set forth "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 559

(2007); *Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2008). As the Supreme Court has emphasized, this standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

*RICO Violation*

ZyXEL Inc. asserts Count I on its own behalf and on behalf of MitraStar as its assignee. To state a civil RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise, (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). ZyXEL Inc.'s Complaint identifies AIT as the enterprise, and that "Skyworks' sale through its agent AIT, and at Skyworks'[s] direction, of the fraudulently marketed and defective Skyworks SE2605L-R[,] constituted a pattern of racketeering activity." Compl. ¶ 42. More specifically, ZyXEL Inc. alleges that Skyworks made numerous fraudulent misrepresentations through the mail or in emails to fob off the defective SE2605L-R to the detriment of ZyXEL and MitraStar, amounting to predicate acts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. These include

> (i) communications touting the viability and fitness for use of the Skyworks SE2605L-R; (ii) marketing and delivering the Skyworks SE2605L-R for sale under false pretenses; (iii) continuing to conceal its fraudulent misrepresentations or material defects of the products thereby causing MitraStar and ZyXEL Inc. unknowingly to sell defective products to its unsuspecting customers through 2018; and (iv) continuing in 2018 to deny its responsibility for the failure of wireless routers containing the Skyworks SE2605L-R.

Compl. ¶ 45.

Skyworks contends, and the court agrees, that ZyXEL Inc.'s allegations fail to establish the requisite pattern of racketeering activity.

> At least two acts of racketeering activity must occur within ten years of each other to constitute a "pattern." [18 U.S.C.] § 1961(5). The Supreme Court has construed the pattern element as additionally requiring a showing that "the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). This is the so-called "continuity plus relationship" standard. *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 15 (1st Cir. 2000).

*Giuliano v. Fulton*, 399 F.3d 381, 386 (1st Cir. 2005). "We can be reasonably certain that th[e] definition [of 'pattern'] does *not* encompass a single criminal event, a single criminal episode, a single 'crime' (in the ordinary, nontechnical sense of that word)." *Apparel Art Int'l, Inc. v. Jacobson*, 967 F.2d 720, 722 (1st Cir. 1992). In *Apparel*, although plaintiff alleged "several instances of criminal behavior [occurring over several months] – a bribe, several false statements, a coverup, and (possibly unlawful) access to

7

confidential information" – these did not amount to a "pattern" because "they comprise[d] a single effort to obtain (and to keep) one $96 million Defense Department contract." *Id.* at 723. Likewise, as the allegations of the Complaint here reveal, all of the alleged fraudulent communication and concealments attributed to Skyworks amounted to an effort to accomplish one goal – "to sell off [Skyworks's] remaining inventory" of the defective SE2605L-R. Compl. ¶ 30. As in *Apparel*, this singled-minded objective does "not seem like a string of . . . separate criminal episodes so related as to threaten further, 'continued,' racketeering activities." 967 F.2d at 723; *see also Giuliano*, 399 F.3d at 390 (a six-month effort to wrest control of a single piece of property insufficient to show a RICO pattern); *Sys. Mgmt. Inc. v Loiselle*, 303 F.3d 100, 105-106 (1st Cir. 2002) (same, single contract). The teaching of these cases "firmly rejects" RICO liability in (as here) the context of closed continuity "where the alleged racketeering acts . . . , taken together, . . . comprise a single effort to facilitate a single financial endeavor." *Home Orthopedics Corp. v. Rodriguez*, 781 F.3d 521, 530 (1st Cir. 2015). And this is true no matter how many discrete acts undertaken to accomplish endeavor are alleged. *Roeder v. Alpha Indus., Inc.*, 814 f.2d 22, 30 (1st Cir. 1987).[2]

---

[2] Because ZyXEL Inc. failed to make out a RICO "pattern" posing a threat of "'continued' criminal activity," the court will deny ZyXEL Inc.'s motion for predicate acts discovery. *See H.J.*, 492 U.S. at 242 ("Because the

*Fraud and Intentional Misrepresentation*

ZyXEL Inc. asserts Count II as MitraStar's assignee. Skyworks contends that ZyXEL Inc. may not assert a fraud claim on behalf of MitraStar because under Massachusetts law, "a mere right to litigate for a fraud perpetrated upon an individual or a corporation resulting in damage personal in character or to the general estate [] is not assignable." *Bethlehem Fabricators v. H.D. Watts Co.*, 286 Mass. 556, 566-567 (1934). In response, ZyXEL Inc. notes an exception to this general rule, namely "where the damage is solely to specific property." *Id.* ZyXEL Inc. argues that because MitraStar suffered "harm to its contractual rights with respect to its purchase of the SE2605L-R," Opp'n at 15, the claim concerns specific property and is therefore assignable. In *Nova Assignments, Inc. v. Kunian*, 77 Mass. App. Ct. 34 (2010), the Appeals Court determined that a claim that a lawyer fraudulently aided a client in concealing funds from his law firm, depriving the firm of contractual fees, was assignable. *Id.* at 42. Here, ZyXEL Inc. has not identified MitraStar's contractual losses "with respect to its purchase of the SE2605L-R" – the Complaint alleges that MitraStar placed purchase

---

RICO statute was only intended to reach long-term criminal conduct, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the continuity] requirement.")

orders for SE2605L-R and these orders were filled. On this record, the court cannot conclude that MitraStar validly assigned the fraud claim to ZyXEL Inc.[3]

*Breach of Implied Warranty of Fitness for a Particular Purpose*

ZyXEL Inc. also asserts Count III as MitraStar's assignee.

An implied warranty of fitness for a particular purpose arises when, at the time of the contract, the seller "has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." The determination whether this warranty arises ordinarily is a question of fact.

*Fernandes v. Union Bookbinding Co.*, 400 Mass. 27, 33 (1987). As Skyworks notes, the Complaint does not allege that MitraStar made Skyworks aware of a particular purpose for its purchase of the SE2605L-R. In its opposition, ZyXEL Inc. claims that MitraStar approached AIT in 2015 with the necessary criteria to select an appropriate power amplifier for its wireless router, and that AIT identified the SE2605L-R as the suitable model. Opp'n at 18 n.19. The court will permit ZyXEL Inc. to amend the Complaint to incorporate this claim-saving allegation.

---

[3] Although the court in *Nova* questioned the continued viability of the non-assignability rule, it has not been abrogated by the Supreme Judicial Court.

Skyworks also contends that that implied warranty claim fails because "commercial plaintiffs must allege privity of contract to maintain a breach of warranty action against a manufacturer," *Irish Venture, Inc. v. Fleetguard, Inc.*, 270 F. Supp. 2d 84, 87 (D. Mass. 2003), and that ZyXEL Inc.'s Complaint establishes that MitraStar purchased the SE2605R-L from AIT rather than from Skyworks. Notwithstanding, the court agrees with ZyXEL Inc. that for pleading purposes, it has sufficiently established privity between MitraStar and Skyworks. The Complaint alleges in the first instance that AIT acted in an agency capacity for Skyworks,[4] *see AcBel Polytech, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2014 WL 4656608, at *4 (D. Mass. Sept. 12, 2014) ("Where a seller engages an agent to sell its products to a purchaser, this does not destroy privity between the purchaser and the seller for the purposes of a breach of warranty claim."). Second, the Complaint alleges that Skyworks directly participated in the sale the SE2605L-R to MitraStar (by providing the PCN in 2016 and the 8D Report in 2018). *See id.* (although purchased through an agent, the buyer of defective voltage regulators

---

[4] Skyworks relies on a disclaimer in its distributor agreement with AIT to deny the allegations of agency. "In Massachusetts the proof of agency is held to be ordinarily a question of fact for the jury." *White's Farm Dairy, Inc. v. De Laval Separator Co.*, 433 F.2d 63, 66 (1st Cir. 1970). Whether AIT may have acted as an agent in fact or as an apparent agent with Skyworks's acquiescence, *see Linkage Corp. v. Trs. of Boston Univ.*, 425 Mass. 1, 18-19 (1997), is not an appropriate issue to be resolved on a motion to dismiss.

sufficiently alleged privity with manufacturer through "substantial direct dealings" with manufacturer).

Finally, Skyworks relies on a provision in AIT's distributor agreement, providing a one-year limited express warranty and disclaiming all implied warranties, as a bar. Where there is a valid assignment of a warranty, "a subpurchaser [] is subject to any limitations or exclusions contained in the express warranty even though he did not receive a copy of it." *Bos. Helicopter Charter, Inc. v. Agusta Aviation Corp.*, 767 F. Supp. 363, 376 (D. Mass. 1991). Whether the warranty disclaimer effectively passed from AIT to MitraStar, a fact-dense issue, is beyond the proper scope of a motion to dismiss, particularly in light of the allegation the MitraStar was fraudulently induced to purchase the defective SE2605L-R.

ORDER

For the foregoing reason, Skyworks's motion to dismiss is <u>ALLOWED-IN-PART</u> (Counts I and II), and <u>DENIED-IN-PART</u> (Count III).[5]

SO ORDERED.
/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[5] Subject to ZyXEL Inc. amending the Complaint no later than January 2, 2020.